```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                  DIVISION OF ST. THOMAS AND ST. JOHN

RICHARD G. VENTO, LANA J. VENTO, )
GAIL C. VENTO, NICOLE MOLLISON,  )
RENEE S. VENTO,                  )
                                 )
            Plaintiffs,          )    Civil No. 2009-155
                                 )
       v.                        )
                                 )
HANDLER THAYER & DUGGAN, L.L.C., )
HANDLER THAYER, L.L.P., DUGGAN   )
BERTSCH, L.L.C., JAMES M.        )
DUGGAN, THOMAS J. HANDLER, and   )
STEVEN J. THAYER,                )
                                 )
            Defendants.          )
                                 )
```

**ATTORNEYS:**

**Alan R. Feuerstein, Esq.**
Feuerstein & Smith, LLP
Buffalo, NY
    *For Richard G. Vento, Lana Vento, Gail Vento, Renee Vento, and Nicole Mollison.*

**David Marshall Nissman, Esq.**
McChain Nissman Law Group
St. Croix, U.S.V.I.
    *For Richard G. Vento, Lana Vento, Gail Vento, Renee Vento, and Nicole Mollison.*

**Andrew C. Simpson, Esq.**
**Rachelle M. Shocklee, Esq.**
Law Offices of Andrew Simpson
St. Croix, U.S.V.I.
    *For Handler, Thayer & Duggan, LLC, Handler Thayer, LLP, Duggan Bertsch, James Duggan, Thomas Handler, and Steven Thayer.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion by Handler, Thayer & Duggan, LLC ("HTD"), Handler Thayer, LLP ("HT"), Duggan Bertsch, LLC ("DB"), James M. Duggan ("Duggan"), Thomas J. Handler ("Handler"), and Steven Thayer ("Thayer") (collectively, "the Attorney Defendants") to stay this matter pending arbitration between Richard Vento, Lana Vento, Gail Vento, Nicole Mollison, and Renee Vento, (collectively referred to as "the plaintiffs") and various third parties (the "Alliance Defendants") in another action in this Court, *Vento v. Crithfield*, Civil No. 2009-174 (CVG).[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December, 2009, the plaintiffs commenced this three-count action against the defendants (hereinafter referred to as the "Malpractice Action"). Count One of the complaint asserts a claim for legal malpractice/negligence against the Attorney Defendants. Count Two of the complaint asserts a claim for

---

[1] The "Alliance Defendants" consist of: Duane Crithfield, Stephen P. Donaldson, Keithley Lake, all individually and doing business as and associated with the following companies: Alliance Holding Co., Ltd., Alliance Royalties LLC, Alliance Royalties Inc., Westminster, Hope & Turnberry LLC, Westminster, Hope & Turnberry Ltd., First Fidelity Trust Ltd., Fidelity Insurance Co. Ltd., Foster & Dunhill Ltd. And its successors in interest Fortress Family Office Group LLC, Offshore Trust Services LLC, Citadel Insurance Co., Ltd., Waterberry Ltd., Axa Holdings Co., AP Holdings, Ltd., New Hope Holdings Ltd.

breach of fiduciary duty against the Attorney Defendants. Count Three of the complaint asserts unjust enrichment. It also requests an accounting.

Based on an overlapping set of facts, the plaintiffs commenced a separate action in this Court, *Vento v. Crithfield*, Civil No. 2009-174, asserting claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*, among others, (hereinafter referred to as "the RICO action"). The plaintiffs commenced the RICO Action against Duane Crithfield ("Crithfield"), Keithley Lake ("Lake"), and Stephen P. Donaldson ("Donaldson") individually and doing business as Alliance Holding Co., Ltd; Alliance Royalties, LLC, Alliance Royalties Inc.; Westminster Hope & Turnberry, LLC; Westminster, Hope & Turnberry, Ltd.; First Fidelity Trust, Ltd.; Fidelity Insurance Co., Ltd.; Foster & Dunhill, Ltd. and its successors in interest; Fortress Family Office Group, LLC; Offshore Trust Services, LLC; Citadel Insurance Co., Ltd.,; BPS International, LLC; Waterberry, Ltd.; AXA Holdings Co.; AP Holdings, Ltd.; John Doe Defendants;[2] ABC Companies; HTD; HT; DB; Duggan; Handler; and Thayer.

---

[2] The plaintiffs state that John Doe Defendants and ABC Companies are named as parties to this lawsuit and are included to name unknown, uncertain, and anonymous defendants whose identity and whose activity are presently unknown

The complaint in the RICO action sets forth nine counts against the Attorney Defendants and the Alliance Defendants. The first count of the complaint asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*, against Crithfield, Donaldson, Handler, Thayer, and Duggan ("Count One"). The second count alleges violations of the Virgin Islands Criminally Influenced and Corrupt Organizations Act, V.I. CODE ANN. tit. 14, § 601 *et seq.*, against Lake, Handler, Thayer, and Duggan ("Count Two"). In Count Three, the plaintiffs allege a wrongful taking and wrongful detention against all of the defendants. Count Four asserts personal liability for conversion against Crithfield, Donaldson, Lake, Handler, Thayer, and Duggan. Count Five alleges conspiracy against all of the defendants. In Count Six, the plaintiffs allege fraud, deceit, and conspiracy to defraud against all of the defendants. Count Seven alleges breach of fiduciary duty against Crithfield, Donaldson, Lake, and BPS. Count Eight alleges aiding and abetting the breach of fiduciary duty against Crithfield, Donaldson, Lake, and BPS. In Count Nine the plaintiffs allege fraudulent conveyance of assets against all of the defendants.

---

and whose identities shall be revealed through the discovery process during the litigation of this case. (Civil No. 2009-174, Compl. ¶ 16).

Thereafter, various motions were filed. The plaintiffs filed motions to consolidate the two actions. The plaintiffs averred that the actions are "factually and substantively the same, and the subject matter of both lawsuits are identical." (Plfs.' Mot. Consolidate 2). The Attorney Defendants filed motions to dismiss the Malpractice Action for lack of personal jurisdiction, improper venue, and failure to state a claim. The motions are still pending.

Subsequently, the plaintiffs entered into an arbitration agreement with the Alliance Defendants regarding their claims in the RICO Action.

On August 16, 2012, there were two motions filed in the RICO Action. The first was a motion filed jointly by the plaintiffs and the Alliance Defendants to stay the RICO Action pending the resolution of the arbitration between the plaintiffs and the Alliance Defendants. They also moved for appointment of an arbitrator. The second was a motion filed by the Attorney Defendants to stay the non-arbitrated claims asserted against them in the RICO Action pending arbitration between the plaintiffs and the Alliance Defendants. The Court granted both motions to stay the RICO Action.

Also, on August 16, 2012, the Attorney Defendants filed a motion to stay the Malpractice Action pending resolution of the

arbitration between the plaintiffs and the Alliance Defendants in the RICO Action. The motion is unopposed.

## II. <u>ANALYSIS</u>

The Federal Arbitration Act, 9 U.S.C.A. § 1, et seq. (the "FAA"), governs arbitration agreements. According to the FAA,

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, *or* an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2.

The FAA provides for a mandatory stay of judicial proceedings under certain circumstances. It instructs that,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id*. at § 3.

In their motion to stay the Malpractice Action, the Attorney Defendants aver that

> The arbitrable issues between the Plaintiffs and the Alliance Defendants will have a significant impact upon the Plaintiffs' pending claims against the Attorney Defendants in this action. The arbitration may lead to a complete resolution of the Ventos' dispute, or, at a minimum, simplify the remaining issues following arbitration. A stay of Case No. 155 will avoid the prospect of inconsistent verdicts and is warranted in the interest of judicial economy.

(Attorney Defs.' Mot. Stay 2, Civil No. 2009-155, ECF No. 162).

Courts have held that the FAA permits a stay of non-arbitrated claims. *See, e.g.*, *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (granting a stay of claims not subject to arbitration); *Contracting NW, Inc. v. City of Fredericksburg*, 713 F.2d 382, 387 (8th Cir. 1983) (same); *American Home Assur. Co. v. Vecco Concrete Const. of Virginia*, 629 F.2d 961 (4th Cir. 1980) (same) (hereinafter referred to as "*Vecco*"). The decision to stay the litigation of non-arbitrated claims pending the outcome of arbitration is one left to the sound discretion of the court. *See generally Barrowclough v. Kidder, Peabody & Co., Inc.*, 752 F.2d 923, 938 (3d Cir. 1985) (". . . the district court, as a matter of its discretion to control its docket may stay litigation among the non-arbitrating parties pending the outcome of the arbitration") (internal citations omitted). In deciding whether to grant a discretionary stay, courts should consider judicial economy, avoidance of confusion, and possible inconsistent results. *See generally*

*Vento, et al. v. Hander Thayer & Duggan LLC, et al.*
Civil No. 2009-155
Memorandum Opinion
Page 8

*Vecco*, 629 F.2d 961 (4th Cir. 1980) (granting a stay of non-arbitrated claims after considering common questions of fact, judicial economy, and avoidance of confusion). *See also Harvey v. Joyce*, 199 F.2d 790 (5th Cir. 2000) (granting a stay of non-arbitrated claims in light of common operative facts underlying all claims); *Morrie Mages and Shirlee Mages Foundation v. Thrifty Corp.*, 916 F.2d 402 (7th Cir. 1990) (granting a stay of claims of a party who did not enter into an arbitration agreement where non-arbitrable claims involved the same underlying issues in claims subject to the arbitration agreement). *Cf. Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009) ("Because the two claims in this case are distinct and unrelated, Chelsea's arbitrable illegal reimbursement claim cannot have a preclusive effect on the nonarbitrable mail order claim; one does not 'predominate' over the other.")

Here, the underlying facts alleged in each of the complaints are similar and overlapping. (Civil No. 2009-155, Compl. ¶¶ 23-52); (Civil No. 2009-174, First. Am. Compl. ¶¶ 45-194). In the Malpractice Action, the plaintiffs allege:

> 44. Additionally, and while defendants were acting both as Plaintiffs' legal counsel in these matters, and as Plaintiffs' trust protectors, the defendants facilitated or knowingly assisted in the transfer and/or misapplication of substantial trust assets from the segregated accounts of the four Nevisian trusts at

> Fidelity Insurance Company that the defendants were involved in creating for the plaintiffs' benefit. In so doing, the defendants used their positions as attorneys and as trust protectors to facilitate this wrongful transfer or misapplication of segregated trust assets. This activity was done covertly, and in violation of the promises and assurances which the plaintiffs had been given by the defendants and those who managed Fidelity Insurance as to how the plaintiffs' trusts' assets had been invested, and resulted in additional financial harm and in the substantial depletion of the trusts' corpus….

(Civil No. 2009-155, Compl. ¶ 44).

Similarly, in their RICO Action the plaintiffs allege:

> 98. Additionally, as a part of Defendants' racketeering activity, the Defendants induced their co-conspirators, Handler, Thayer and Duggan to breach their fiduciary duties and obligations that were owed to the Plaintiffs in order to achieve the conveyance of Plaintiffs' assets by having them placed under Defendants' control upon Handler, Thayer and Duggan's urging and connivance….

(Civil No. 2009-174, First. Am. Compl. ¶ 96). The alleged conduct giving rise to claims for attorney malpractice and breach of fiduciary duty in the Malpractice Action are the same acts alleged to support a claim against the Attorney Defendants under a RICO theory in the RICO Action.

The arbitration agreement in the RICO Action (the "Arbitration Agreement") provides that

> The Parties hereby agree to submit all issues remaining between and amongst them, including compliance with the terms of the Partial Settlement Agreement and the Disputed Measure of Royalty Agreement and agree to final binding arbitration pursuant to the terms of this Agreement.

(Arbitration Agreement 2, Civil No. 2009-174, ECF No. 361-4). A determination of the plaintiffs' extent of damages, if any, and whether the cause of any alleged damages arose from the plaintiffs' own investment decisions rather than any acts by the Attorney Defendants are issues that are within the broad scope of the Arbitration Agreement. They are also issues that are common to the Malpractice Action and the RICO Action. The resolution of those issues in arbitration could simplify the remaining claims against the Attorney Defendants in the Malpractice Action.

That consideration weighs in favor of staying the Malpractice Action pending resolution of the arbitration between the plaintiffs and the Alliance Defendants. *See, e.g.*, *Contracting NW, Inc. v. City of Fredericksburg*, 713 F.2d 382, 387 (8th Cir. 1983) (finding it sensible to stay litigation against non-arbitrating parties "when the third party litigation involves common questions of fact that are within the scope of the arbitration agreement.")

### III. CONCLUSION

The arbitration between the plaintiffs and the Alliance Defendants has the likelihood of resolving or simplifying a number of issues in the Malpractice Action. A stay would also avoid duplication of efforts on the part of the witnesses, the

parties, and the Court. Upon completion of the arbitration, discovery, motion practice, and issues remaining for trial are likely to be narrower in scope. Accordingly, the Court will stay this matter. An appropriate order follows.

        S\_____
         **Curtis V. Gómez**
          **Chief Judge**